and it doesn't have to be a conventional telephone number anyway. It could be an unconventional telephone number like 888 to reach a specialist. Thank you. Thank you. The case is submitted. We thank both counsel. We will hear argument next in number 2010-5077, MACIAS v. Department of Health and Human Services. Mr. Moxley, when you're ready. Thank you. Please record. Counsel, I'm Robert Moxley from Cheyenne, Wyoming. I come here on behalf of the entire petitioner's bar of the Vaccine Injury Compensation Program to ask this I mean, as I understand your brief, Mr. Moxley, you say AVERA was correct to the extent it adopted the forum rule, but was incorrect to the extent it adopted the law of the Davis County exception. That's absolutely my position. It is also my position, Let's assume that we are in the regime where the Davis County exception applies. We have to follow the law of AVERA. It seems to me that what you complain about is the way the special master arrived at the $220 rate. Is that correct? Well, very much. It's not the way he arrived at it. The situation is that there has never been a proper determination of the relevant market. Even if Davis County applies, there was never a determination in the AVERA case of what is the relevant market. And on the record I say this, but what we do is, don't we, under AVERA slash Davis County, we make two determinations. One, where was most of the work done? Where was the overwhelming majority of the work done? And two, what is the discrepancy, if any, between the forum rate, in this case, District of Columbia, and what we'll call the hometown rate, Cheyenne, Wyoming? And as I understand it, in that context, what are you complaining that the basic law set down by the Supreme Court has not been imported into the vaccine program, and that there has not been a proper market determination or relevant community determination? Even if Davis County was to apply, the relevant market in Cheyenne, Wyoming, is the error on the part of the Special Master was in determining, again, doesn't it come down to, in his determination of the $220 rate, because you're saying the Special Master went about it the wrong way. Well, no tribunal anywhere that I know of is allowed to draw irrational inferences from the evidence, much less make up the evidence. This Special Master had no evidence before him whatsoever with regard to what the market rate is in Cheyenne, except for the evidence that I, I'm sorry. Yeah, I thought you started by telling us the evidence was overwhelming. The evidence was overwhelming, but it was my evidence. And your evidence was, as far as I could tell, so where am I wrong, one affidavit, I guess, by a practitioner in Cheyenne, Wyoming, who didn't do vaccine cases? Well, that and the evidence compiled by the United States government in defining the federal practice market between Wyoming and Washington, D.C., and indeed, every place else. I don't understand that. The best evidence of the federal practice market everywhere in the United States is the locality rates that are paid to Department of Justice attorneys, among other people. I mean, let me... Are you saying that, let me make sure I understand, you're saying that the federal practice rates for private practitioners ought to be parallel to the amount paid to AUSAs? In fact, it just is. My evidence, the witnesses I presume... Are you sure you want to be compensated at the same rate as an AUSA? Sure. What's that hourly rate? What's that? What's that hourly rate in Cheyenne, Wyoming? The hourly rate in Cheyenne, Wyoming that would allow me to pursue a dedicated vaccine practice... No, I'm asking what the hourly rate is for U.S. attorneys in Cheyenne, Wyoming. They don't have an hourly rate. No, they don't. But if they work, let's say they work 2,000 hours a year, and they make $100,000 a year, they're making, what, $50 an hour. They make 87% of what Washington, D.C. attorneys make. I would therefore be willing to take 87% of Laffey Matrix rates because the people who do federal practice in Washington, D.C. under every statute that uses the term reasonable attorney's fees receives the Laffey Matrix as the floor of their compensation. All you're saying with that is that the AUSAs in Cheyenne are underpaid and the AUSAs in Washington are grossly underpaid. And that doesn't seem to me it gets you very far. Congress sets rates for pay of federal employees, including, I might add, judges, at pretty low numbers. Yes. That is not something that... Let me put it this way in the argo of the age. I don't think you want to go there. Well, imagine a situation where, using the logic of this case, an advertisement for vaccine attorneys in the Department of Justice was put out saying vaccine attorneys wanted limited skill set needed and those attorneys were paid less than other federal attorneys. That is what this situation is. This situation is that... What this situation has created is a situation where counsel are not available to vaccine injured petitioners. Judge Shaw wrote in... Congress was charged with creating this regime and, in fact, maybe you know better than I, but I don't recall seeing any other statutory scheme where attorneys get reasonable attorney's fees even if they don't prevail in a case. There are several. There are several. There are numerous. But, so take it... I mean, why isn't that an argument to be taken to Congress? I mean, your arguments about the needs of attorneys and the unavailability of attorneys, that's not something... I have a hard time evaluating that from the bench deciding those kinds of issues. That sounds more like a congressional hearing to me. There's a very simple answer to that and it is in the new Purdue case from the United States Supreme Court. Justice Alito, in the new Purdue case from the United States Supreme Court, said that my burden in order to get an adjustment, as it were... Actually, I'm earlier in the process because I just want the rate set properly to begin with. But it should be a distinction without a difference between setting the rate or adjusting the rate. And Justice Alito wrote in the Purdue case that my burden is to identify a factor not taken into account by the load star. And in this case, the factors that have never been taken into account in the so-called load star, which is simply hours times a rate. Load star is not a very helpful term. But the thing that has never been taken into account in vaccine practice is that this is a very expensive specialty practice. Are you saying, Mr. Monson, that there should be some kind of... Leaving aside whatever Davis County, Guam, any of these cases... There should be some kind of a special rule that applies for the vaccine bar because of the complexity or uniqueness of vaccine program practice? Well, there's a case... This Purdue case is the culmination of a long line of cases that talks about the question of whether or not adjustments are available. And if you go back through the Supreme Court's jurisprudence, you find a very influential case, Delaware Valley 2. There are actually two cases in Delaware Valley, and the second one talked about whether or not contingencies in cases should be compensated with an enhancement for risk. I may have missed it, but are you saying that there should be some kind of a special approach in Vaccine Act cases? No, I think we should be entitled to get what people get in Washington, D.C. for doing FOIA cases. I believe that we should get what people get in Washington, D.C. for doing civil rights cases. Now, when you say we, you're talking about lawyers like yourself in Cheyenne? Everywhere, because this is a national market. But then you're saying, though, aren't you saying that we should... Isn't that counter to the rule, if you will, that AVERA lays out? Well, yes, but I must insist that AVERA was wrongly decided. But that isn't something that we can really address as a panel. That is an argument that really can only be addressed, I think you'll agree, to the in-bank court. We can't say, well, you know, we've looked at AVERA and we just think that panel got it wrong. Therefore, we're going to decide this case differently. I respectfully disagree. You disagree with that proposition or you disagree with AVERA? I know the latter. No, I respectfully disagree with the assertion that this panel can't do anything about AVERA or depart from the application of Davis County that was essentially crammed down my throat. The difference is that... Let me put it this way. How would you craft the paragraph of our opinion if we agreed with you that we ought to try to disavow Davis County? What would we say? You would say that there was never an opportunity for the petitioner in AVERA to demonstrate with evidence that the relevant market in Cheyenne, Wyoming, the federal practice market, a complex federal litigation market, which was not reflected in the generic local rate that was awarded in AVERA. Okay. But I think the statement comes from the AVERA opinion, I think, quoting you, which says, since 2004, I've charged my clients $200 per hour and the increase is going to go, increase to $250. That is very high for the Cheyenne market. That's the Cheyenne market, but that's not the Cheyenne federal market. Were you doing federal cases? No. In your experience? I mean, up until 2004, you were doing non-federal cases. That was office practice. That was criminal defense. That was state court practice. And that was practice on retainer. That was practice where I got paid. That was practice where I didn't have to wait 6 or 7 or 9 or 15 years to get paid for my efforts. Federal law does not countenance a hardship on counsel. Federal law calls for rates that allow counsel to be effective. So what you're saying in terms of the rule of law, so we can just go back to Judge Bryson and Judge Shaw's point about how we deal with the barrier, but you want and need a rule that says the Laffey Matrix applies and there's no distinction to be drawn in federal cases with respect to any different localities. There's got to be a national. I don't care if you draw the locality distinction that is used, for instance, in HPL technologies. I mean, there's a lot of places where the Laffey Matrix isn't enough because the federal rates in different places, Sacramento, California, for instance, in HPL technologies, they raised the Laffey Matrix rates with reference to the difference between the locality pay of federal attorneys and the locality pay of federal attorneys in Washington, D.C. So what's the rule? Federal cases, federal rate, except that it can go higher in some localities but never lower? They can go lower. I don't care if you- Under what circumstances would they go lower? If you can establish that in Cheyenne, Wyoming, the rate is less, correct? If you look at the federal government's analysis of the market value of government federal practitioners, you find a measure that dovetails with my own calculations with my accountant where we derived a necessary rate to do a dedicated vaccine practice of between $416 and $500 an hour. And that is a bare-bones practice that would allow me to make a salary that would be less than Ms. Reeves makes. What I'm saying is that- You say at $500 an hour, you would end up with less than what a federal attorney would make? Yes, that's correct. You have a lot of overhead, if that's right. Well, vaccine practice is an astonishing overhead. I mean, vaccine practice is a money pit. I tried a case over the telephone recently, two nine-hour sessions over the telephone because I couldn't afford to go anywhere where the special master was or where the experts were. And when that two days was over, my expert bill for that case was in the neighborhood of $45,000. These cases are- But what about this case? I mean, in this case, there was no real litigation, right? This was a resolution through settlement, a case that was pending a long time because there were all these negotiations going on on the H1B vaccine. I mean, you had two expert reports. That was the sum and substance of this case, right? No, no, I had several expert reports. I had two expert reports from Dr. Geier that I didn't get paid for. I had expert reports from Dr. Levine that I did get paid for. I had trial testimony from Dr. Levine. I had travel expenses. You got paid for all of them? I haven't yet. I got paid for Dr. Levine. I got paid nothing for Dr. Geier. That's a different issue. I haven't been paid yet for my life care planner, whose bill was several thousand dollars, for the settlement effort. I have subsidized this program for years in this case and in every other. There was a time when I formed my first vaccine firm. We took 100 cases. That was at a time when the statute promised that the cases would be finished in 240 days. And 10 years later, I was still working on those 100 cases. The only thing I'm asking for is for this type of statutory litigation to be compensated the same way as all other federal statutory litigation is in Washington, D.C. And all I'm also asking for is that the promise of a vera for interim fees be liberally applied instead of strenuously applied. I am suggesting that we are like private attorney generals. Our work helps form the basis for vaccine policy in the United States. There is a significant moral hazard created when we are not paid enough to provide services to our clients. And it is a national market. That is the error of a vera, and there was never any opportunity to litigate the question of whether or not this is a national market. There is no economic rule that says that if you produce a good or a service cheaply, that you can't collect a market price for it. Are you saying, Mr. Mosse, that you should, in using the Davis County procedure, look not to a rate based on Cheyenne, Wyoming, in this case, but a rate based on some national market? Or are you saying you should cast a vera slash Davis County aside completely and in the vaccine area just look at a national market? Are you saying the first one or the second one? Both, and here's why. What I'm saying is that the federal practice market in Washington, D.C. is a national market. And the Laffey Matrix expresses the bottom end of the market for the national federal practice market in Washington, D.C. My Ph.D. economist says that the vaccine program is likewise a national market, and therefore, because it takes place here, I'm asking for the Laffey Matrix to be applied. Uniformly to the program. I apologize for offending myself. I just want to make sure I understand. You're saying that if we accept the vera Davis County procedural approach, when you look to the hometown rate, you should not look to what people in Cheyenne, Wyoming, generally receive for certain types of cases, but rather we should look to what you call this national market rate. That's one thing you're saying, and you're also saying that you should abandon a vera completely because you say it's wrong, and should just for vaccine cases have a national rate. You're kind of making these alternative arguments? Well, what I'm saying is that it really makes no difference because the only evidence on this record with regard to the value of complex federal litigation in Cheyenne shows that it is comparable to the adjusted Laffey Matrix rate that one gets when one follows, for instance, HPL technologies. What I'm saying is that the HPL technologies rate validates the testimony of my expert on federal rates in Cheyenne, who was indeed an expert. He was the defense liaison in complicated litigation, and he knows what the rates are for complex federal litigation in Wyoming. Now, I know Judge Bryson and Judge Prost were recently involved with the Doe 11 case, a vaccine case. You've been involved with vaccine cases all the way back to Saunders. It is complex federal litigation, and as Special Master A. Bell said in his Walmsley case, it is fatuous to say that it's not. This court actually needs to reconcile a complete published conflict of interpretation of the statute in the Office of Special Masters. Walmsley says you use the Laffey Matrix. Macias and Rodriguez and Hall, all of which are on appeal to this court, say you don't. And according to an amicus brief that was filed in Rodriguez, fully a quarter of litigation that's coming up through the Court of Federal Claims and to this court is fees litigation. And we're missing the point. What we should be doing is representing these injured people, and we can't afford to. Mr. Moxley, we've run well over time. We'll hear now from Ms. Reeves. Thank you. Good morning. May it please the Court, my name is Catherine Reeves. I represent the Secretary of Health and Human Services in this matter. I would just like to start out by mentioning, it's in a footnote in Respondent's brief, that in the last three fiscal years alone, Mr. Moxley has personally received no less than $336,312.07 in attorney's fees. That does not include the subsequent attorney's fees award that he recently received in this matter after his motion for review, which was $25,851.40. That's entirely fees, no costs. With the fee decision that has been appealed here that has not been paid because of the appeal, Mr. Moxley's fees incurred in this matter and awarded are $86,952.15. Now, with regard to Mr. Moxley's... And most of that is for not the underlying case, but the questions resulting from his amount of fees? The amount of fees related to the underlying claim is $42,065.50. But the rest of those fees are all related to the fees litigation. And, of course, we have yet to see the bill that Mr. Moxley will undoubtedly submit related to this appeal. And I take it those fees are all subject to the only limitation is whether this one is in good faith and reasonable? Well, in this particular instance, there's no question the petitioner was entitled to a fee award because he did receive compensation. Right. But, I mean, you mentioned the fees for this appeal, for example. That would be essentially an automatic fee entitlement? Is that your position? Well, we certainly reserve the right to object to fees that we don't feel are reasonable. But there would be nothing to stop... There's a question between whether the fee request is reasonable versus whether any fee request is legitimate because the position taken was unreasonable. Do you... Let me ask the question this way. Do you ever object to a fee on the ground that the position taken by the party and, by extension, the attorney, was unreasonable? We have raised such objections, yes. How frequently? You know, I really couldn't say. My impression was in the program that would be exceedingly rare. Is that an overstatement? Well, for fees to be denied completely because of a lack of reasonable basis is extremely unusual, yes, sir. Do you remember the last time offhand that... You work in this area regularly, right? Yes, sir, for the last 20 years. Right. Do you remember the last time that happened? Off the top of my head, no. Okay. Maybe I'm wrong about this case, but weren't some of Mr. Moxley's fees in connection with the appealing of the attorney's fees disallowed? Yes, they were. Like some summary judgment motion or something? Yes, ma'am, that is correct. The special master, when the matter was remanded to him from Judge Hodges after the motion for review was resolved, considered the petition for fees. We did not object to an award of fees. We raised some general objections. The special master determined an award of fees, but then he reduced it, as he's allowed to do, reduced the lodestar because of the lack of the quality of representation that Judge Hodges referenced in his opinion and ordered denying the motion for review. But he did receive fees. Mr. Moxley did receive an award that has been paid for his fees related to the motion for review. On the question, are we ever left open, correct, whether the Lackey Matrix should apply? The court found that it wasn't necessary for them to address that particular issue. I assume the government's position in this case is that it's equally unnecessary? Yes. I think, you know, unless you were to find that the special master was arbitrary and capricious in his fact-finding as far as his thorough analysis of why the Lackey Matrix didn't apply to Vaccine Act litigation or that he abused his discretion in determining that it did not apply, then there would be no reason for you to address the applicability. Now, Mr. Moxley mentioned some other cases that are pending. I think in the statement of related cases, Rodriguez was listed. Is there some case on its way up here that presents that issue for square? The Rodriguez case involves an attorney that practices in, and it is on appeal before this court, that practices outside of the forum but in Manhattan. And his issue is he received a forum rate from the special master, which is lower than what he would get from practicing in his local market, but that was required based on the Avera decision. The Hall case is Mr. Moxley's former law partner, his petitioning, and he is simply objecting to, it's my understanding, the application of the Davis exception. He wants to be awarded his fees based on a forum, a D.C. forum rate. Of course, if we were to adopt the Lackey Matrix here but adhere to the Davis exception, Mr. Moxley's loss would even be clear, would it not? Yes, ma'am. The discrepancy between the forum fees and the non-forum fees. Yes, ma'am, unless you were to find that the special master was arbitrary and capricious in determining his local forum rate, local market rate, adopting the Lackey Matrix as the basis for the forum rate under Avera would not help Mr. Moxley here. Mr. Moxley, in his argument, was talking about that his position is that the vaccine market is a national market. The only evidence that was presented to support the argument that it's a national market and there's, in its complex federal litigation, similar to, say, the Lackey case, was an affidavit from an attorney named Donald Schultz who practiced in a large national firm doing different types of litigation than vaccine litigation, but he has an office in Cheyenne. So that was the evidence that Mr. Moxley presented that the- In Cheyenne or Casper? I think perhaps it's Casper. I know it's in Wyoming. Yeah, Casper is- I've only been to Wyoming once, and it was for a case with Mr. Moxley years ago. It was to Cheyenne. But Mr. Schultz's rates are $375 to $405 an hour for the type of work he was doing, which was specifically not vaccine act litigation. If I could ask one question that relates to- that's been in my mind a bit. Under Avera, you have to do two things. Number one, you have to look at where the work was performed, and number two, you then have to look at the difference between the forum rate, the District of Columbia, and in this case, Cheyenne, correct? Yes, sir. Now, in the second part of that Avera slash Davis County exercise, if you will, what rate do you use as the benchmark rate in the District of Columbia to compare with the Cheyenne-Wyoming rate? Do you use a Laffey matrix rate as your benchmark in the District of Columbia to compare with Cheyenne, or do you use some other rate? Well, as it has- Look, I'm thinking generally here. Well, generally, as Avera has been applied, is in each case the special master makes his or her own determination as to what the forum rate is. There was some evidence submitted in this case. The problematic aspect of determining a D.C. forum rate for vaccine program attorneys is there are not any attorneys that are located in D.C. that practice in the program regularly other than a professor at GW Law School who we submitted evidence of the hourly rate that he receives for his cases, but because he's salaried, he doesn't have overhead, he doesn't have an office, a law office, a private practice, the special master did not find that evidence particularly relevant to his determination of what a forum, D.C. forum rate is for program attorneys. Your position is that it's really on a case-by-case basis for the special master to determine what rate he or she is going to use when comparing D.C. to Cheyenne or wherever else it may be. That's correct. Presumably, is it possible that in that scenario or in that approach that a special master could choose to pick a D.C. rate for comparison with a local rate based on the Laffey matrix? Certainly, he or she could if it was justified based on the evidence. I mean, what happened in this case was the special master did a very thorough analysis and explained why he found that the Laffey matrix did not apply, not the least of which reason was the fact that the litigation in the Laffey case itself was much more complex. Was he saying that in terms of comparing D.C. to Cheyenne? I'm sorry, could you repeat the question? I'm trying to recall. When he said Laffey matrix did not apply, which is correct, he did say that. Was he making that statement saying Laffey matrix does not apply  Yes, yes, but he also generally said that the Laffey matrix is not a valid measure of what would be a reasonable fee in a vaccine case. And he did, as I said, a very thorough analysis. He also compared the litigation itself that occurred in the Laffey case, which involved thousands of plaintiffs, protracted proceedings, multiple appeals. It resolved an issue that affected many, many people. As opposed to this case, it involved one petitioner. There was one hearing. There were no appeals regarding the underlying claim. So he found that the litigation in this case was far simpler than in the Laffey case. But the other distinction that he made was that, or the other determination that he made, is that the Laffey matrix has not been adopted universally even within the D.C. forum. There are other types of cases that are heard in the federal courts in D.C. where attorney's fees have been awarded where it's been determined that the Laffey matrix should not be the basis for compensating those fees. He talked about the Agapito case, which was litigation under the EIA, where the Board of Education has come up with a lower matrix as far as a different matrix for determining attorney's fees. And he also cited the Muldrow case, which was a very straightforward negligence suit. In those cases, Laffey matrix rates were not awarded even though they were sought. And so it's not unique to this program that the Laffey matrix has been rejected as a measure for reasonable attorney's fees. But in any event, I take it that, as we've talked about previously, if we follow the Avera slash Davis County lead, it doesn't matter whether the Laffey rate is applicable to the forum if the special master is correct in saying the gap between the Laffey rate and the place where most of the work was done is substantial. So in a way, the more the special master says that the Laffey rate applies and it moves up, the more applicable the Davis County exception, right? Correct, correct. And it's particularly applicable in Vaccine Act cases, as I said, because most of the attorneys that appear regularly in the program are not located in the forum. And most vaccine cases, the bulk of the work is not performed within the forum. It's performed someplace else. Mr. Moxley referenced that he did a hearing on the phone recently. That's not at all unusual. It's not at all unusual. In fact, it's the norm for Respondents Council and the special master to travel to the location that's convenient for the petitioners. Now, we're only talking. Let me make sure, because during Mr. Moxley's argument, I got a little confused about the scope of what we're dealing with here. We're only talking about the attorney fees, right? We're not talking about expert compensation consultants, cars, travel, and so forth. This is just straight hourly fees, right? Yes, sir. Yes, sir. Okay. Although Mr. Moxley has raised an objection with regard to the special master's refusal to compensate him for. When Mr. Moxley said that at $500 an hour, he would make less than you do. I find that hard to believe, sir. When you suggest that he has a high overhead, he started talking about the experts. So that got me confused. Well, in this particular case, it is true that he was not compensated for a bill that he incurred for one of his experts. Well, but that then becomes, the question then becomes whether he was paying the experts out of his own pocket. And I won't ask him that, and I don't know. But if we're talking about fees only here, then we're talking about something that doesn't vary with whether the experts get compensated. Yes, that's absolutely right. Depending on what the arrangement is between the lawyer and the expert. All right. Yes. Well, if you do not have any further questions, I think that I have covered everything that I felt necessary. Thank you. Thank you. Mr. Moxley, if you have any rebuttal. The only thing I would point out is that Ms. Reese wasn't correct with regard to my showing that this is a national market. I didn't have an attorney's opinion that this is a national market. I had the opinion of a Ph.D. economist who wrote the Adjusted Laffey Matrix and is the acknowledged expert in fee-shifting attorney's fees in Washington, D.C. If he calls this a national market, I submit that it is a gross abuse of discretion for a special master to say my expertise trumps that. And that is exactly what this special master said. Okay. Thank you. Thank you. The case is submitted. Both counsel. All rise.